## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| NATASHA L. PREECE, | : | |
| | : | |
| Plaintiff, | : | CASE NO. 2:25-cv-0050 |
| | : | |
| v. | : | JUDGE WATSON |
| | : | |
| CITY OF WESTERVILLE, *et al.*, | : | MAGISTRATE DEAVERS |
| | : | |
| Defendants. | : | |

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Defendants City of Seneca, Major Jeremy Rothell, and Jennifer Heller (collectively "the South Carolina Defendants") seek judgment on the pleadings as to each of the claims asserted against them. In support of this request, Defendants rely upon the *Younger* abstention doctrine for the proposition that federal courts should not enjoin state court proceedings. As this doctrine is entirely inapplicable to the instant matter, Defendants' Motion must be **DENIED.**

Respectfully submitted,

/s/ Samuel H. Shamansky_____
**SAMUEL H. SHAMANSKY CO., L.P.A.**

Samuel H. Shamansky (0030772)
Donald L. Regensburger (0086958)
523 South Third Street
Columbus, Ohio 43215
(614) 242-3939 – Phone
(614) 242-3999 – Fax
shamanskyco@gmail.com

Counsel for Plaintiff

**RESPONSE**

In their Motion, the South Carolina Defendants argue that "[under] *Younger v. Harris,* this Court should abstain from enjoining Plaintiff's state court criminal proceedings." Defendants' Motion for Judgment on the Pleadings (hereinafter "Motion"), Doc. 31, PageID#107. In the interest of clarity, it should be noted that the only relief requested within the Amended Complaint is for money damages associated with Defendants' individual and collective misconduct, which proximately resulted in the deprivation of Plaintiff's constitutional rights. Amended Complaint (hereinafter "Am. Compl."), Doc. 3, PageID#34. There is no request asserted for any sort of injunction, that the South Carolina case be stayed or dismissed, or that South Carolina should be otherwise prohibited from legally prosecuting the same. *Id.*, *passim*. Thus, the factual and legal basis for Defendants' Motion is tenuous at best.

**FACTUAL ALLEGATIONS**

Before directly addressing the legal arguments set forth in Defendants' Motion, Plaintiff must provide some clarification concerning their factual recitation. Plaintiff is a resident of Ohio. Am. Compl. ¶ 7, Doc. 3, PageID#22. There is no claim that she ever travelled to South Carolina. Am. Compl., Doc. 3, *passim.* There is no claim that she ever engaged in any conduct, lawful or otherwise, while present within South Carolina. *Id.* There is no claim that she fled that jurisdiction before, during, or after the initiation of criminal proceedings. *Id.*

The South Carolina Defendants further claim that Plaintiff "began a pattern of harassment" by requesting wellness checks on her son. Motion, Doc. 31, PageID#106.[1] This assertion

---

[1] They additionally allege that Plaintiff's purported harassment included contact with "the school where Dale Colegrove's children attend." Motion, Doc. 31, PageID#106. The source of this allegation is unclear, as it contained neither within the Amended Complaint nor within the exhibit attached to Defendants' Motion. As such, it appears to be improperly before the Court.

misrepresents the content of the Amended Complaint. Though Plaintiff certainly requested wellness checks, the issue of whether that communication constituted protected speech (as asserted within the Amended Complaint) or criminal harassment (as argued by the South Carolina Defendants) is a disputed legal conclusion rather than an issue of fact. What is factually undisputed is that Plaintiff was *charged* with criminal harassment in South Carolina as a result of those calls. Am. Compl. ¶ 34, Doc. 3, PageID#25. Similarly, it is factually accurate to say that a South Carolina warrant was issued for her arrest. *Id.*; see also Def. Ex. A, Doc. 33-1, PageID#130-131.

Finally, the South Carolina Defendants allege that "the Seneca Police Department sought extradition." Motion, Doc. 31, PageID#106. This is a blatant falsehood. As reflected by the Amended Complaint, Defendants were entirely aware that the arrest warrant only authorized South Carolina law enforcement officers to effectuate Plaintiff's arrest in South Carolina. Am. Compl. ¶¶ 39-41. Defendants might have told the Westerville Police Department that they were going to seek extradition but, as explained in more detail below, that formal legal process was never pursued at any level. *Id.* As a result, rather than soliciting a lawful arrest, the South Carolina Defendants solicited a kidnapping. Am. Compl. ¶ 47, Doc. 3, PageID#27.

<u>**ARGUMENT**</u>

Despite its purported reliance on *Younger v. Harris*, Defendants' Motion conspicuously fails to cite any operative language from that decision. This omission is even more apparent given the questionable applicability of abstention to this case. Indeed, while Defendants suggest that any federal civil action is prohibited due to the mere existence of the South Carolina criminal case,[2] the Supreme Court of the United States has flatly rejected any such application of *Younger*.

---

[2] Defendants have affirmatively stated that "[Plaintiff] is required to exhaust her state court remedies before bringing the instant suit." Motion. Doc. 31, PageID#109, citing *Loch v. Watkins*, 337 F.3d 574, 578 (6th Cir. 2003). A cursory review of that decision reveals that *Loch* contains no

By way of background, the *Younger* decision arose out of a case in which the Plaintiff filed a federal complaint "asking [the district court] to enjoin the [District Attorney of Los Angeles] from prosecuting him." *Younger v. Harris,* 401 U.S. 37, 39, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In support of that requested relief, Harris argued that the California statute at issue "inhibited him in the exercise of his rights of free speech and press, rights guaranteed him by the First and Fourteenth Amendments." *Id.* A three-judge federal district court ultimately sided with Harris and issued an Order which "restrained the District Attorney from 'further prosecution of the currently pending action.'" *Id.* at 40.

Upon review of that decision, the Supreme Court of the United States noted that the district court's issuance of a federal injunction with respect to a state court prosecution violated judicial policy and federal statute, to wit:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.'

*Id.*, citing 28 U.S.C. 2283. Based on that holding, the Supreme Court reversed the decision of the district court, describing it "as a violation of the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." *Id.* at 41.

Contrary to Defendants' asserted position, however, this does not mean that *Younger* abstention applies whenever a state case is pending. In fact, the application of *Younger* abstention

---

such language. Rather, it notes that a state court proceeding "remains pending until a litigant has exhausted his state appellate remedies." *Id.* at 578. However, "the pendency of an action in [a] state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (quoting *McClellan v. Carland,* 217 U.S. 268, 282, 30 S.Ct. 501, 54 L.Ed. 762 (1910)).

is the exception rather than the rule. When discussing the circumstances under which abstention

applies, the Supreme Court of the United States provided lower courts with the following guidance:

> Abstention is not in order simply because a pending state-court proceeding involves the same subject matter. *New Orleans Public Service, Inc. v. Council of City of New Orleans,* 491 U.S. 350, 373, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (*NOPSI* ) ("[T]here is no doctrine that ... pendency of state judicial proceedings excludes the federal courts."). This Court has recognized, however, certain instances in which the prospect of undue interference with state proceedings counsels against federal relief. See *id.,* at 368, 109 S.Ct. 2506.

> *Younger* exemplifies one class of cases in which federal-court abstention is required: When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution. This Court has extended *Younger* abstention to particular state civil proceedings that are akin to criminal prosecutions, see *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), or that implicate a State's interest in enforcing the orders and judgments of its courts, see *Pennzoil Co. v. Texaco Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). We have cautioned, however, that federal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not "refus[e] to decide a case in deference to the States." *NOPSI,* 491 U.S., at 368, 109 S.Ct. 2506.

> Circumstances fitting within the *Younger* doctrine, we have stressed, are "exceptional"; they include, as catalogued in *NOPSI,* "state criminal prosecutions," "civil enforcement proceedings," and "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.,* at 367–368, 109 S.Ct. 2506. Because this case presents none of the circumstances the Court has ranked as "exceptional," the general rule governs: "[T]he pendency of an action in [a] state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (quoting *McClellan v. Carland,* 217 U.S. 268, 282, 30 S.Ct. 501, 54 L.Ed. 762 (1910)).

*Sprint Communications, Inc. v. Jacobs,* 571 U.S. 69, 72-73, 134 S.Ct. 584, 187 L.Ed.2d 505

(2013).

Given this framework, it is abundantly clear that *Younger* abstention applies only to those

cases wherein the Plaintiff seeks to enjoin, inhibit, or otherwise prevent his or her criminal

prosecution within a state court. The instant matter does not present such an "exceptional" request.

Rather, it presents a simple federal civil claim for damages arising out of constitutional deprivations which were directly caused by Defendants' overzealous and unlawful conduct *related* to that state case.

**Potential *Younger* Application**

As previously noted, this case does not involve any request to stay, enjoin, or otherwise prevent Plaintiff's prosecution in South Carolina. Quite frankly, it does not even contain an allegation that S.C. Code 16-3-1700(B) is unconstitutional. It is simply a civil case seeking damages for clearly established constitutional deprivations. Thus, for the reasons set forth in *Sprint,* as well as *Younger* itself, abstention would be improper. However, even if Plaintiff had requested an injunction, application of *Younger* abstention would still be inappropriate.

In making this argument, Plaintiff concedes that there is an ongoing state proceeding in South Carolina. Plaintiff also acknowledges that state criminal prosecutions, including her own, generally advance important state interests. However, it is the third prong of the *Younger* test where any abstention analysis falters.

Under *Younger's* third branch, the moving party must demonstrate that "there is an adequate opportunity in the state proceedings to raise a constitutional challenge." *Tindall v. Wayne County Friend of the Court*, 269 F.3d 533, 538 (6th Cir. 2001). Plaintiff has not raised a constitutional challenge to S.C. Code 16-3-1700(B). Similarly she has not raised a constitutional challenge that might be cognizable within the context of a criminal prosecution, e.g., suppression issues, *Brady* violations, speedy trial violations, sufficiency of the evidence at trial, effective representation of counsel, and so forth. Nothing about Plaintiff's claims interferes with that prosecution. Rather, she has asserted a civil claim for money damages under the authority of 42

U.S.C. 1983. It is readily apparent that there is no opportunity to present such civil claims in a South Carolina criminal proceeding.

The Supreme Court of the United States has previously held that "claims brought pursuant to § 1983 sound in tort." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709, 119 S.Ct. 1624. It has additionally observed that any such claim "provides relief for invasions of rights protected under federal law. *Id.* Thus, as noted by Justice Scalia, § 1983 actions provide "a uniquely federal remedy." *Id.* at 725 (J. Scalia, concurring). Moreover, it is only "the purest coincidence…when state statutes or the common law provide for equivalent remedies; any analogies to those causes of action are bound to be imperfect." *Id.*

Given the uniquely federal nature of §1983 relief, it is difficult to discern the manner in which a South Carolina criminal court might grant relief for Plaintiff's federal civil claims. The unavailability of any such relief is further underscored by the relatively broad range of conduct for which South Carolina employees and agents are granted civil immunity from civil damages. S.C. Code 15-78-10, *et seq.*

Finally, Plaintiff would observe that the Defendants' conduct has been, at least from all appearances, driven exclusively by bad faith. Defendants filed a criminal complaint under S.C. Code 16-3-1700(B) despite having actual knowledge that the charging affidavit was devoid of any allegations concerning an intrusion in Dale Colegroves' private life, a claim that the intrusion served no legitimate purpose, and that it caused or would have caused a reasonable person to suffer mental or emotional distress, i.e., the operative elements of that offense. Am. Compl. ¶¶34-47, Doc. 3, PageID#25; Def. Ex. A, Doc. 33-1, PageID#130-131.

Thereafter, Defendants sought to have Plaintiff taken into custody in Ohio and extradited to South Carolina in the absence of any legal authority for any such seizure. Am. Compl. ¶¶ 38-

40, Doc. 3, PageID#26. Further compounding that violation, they actively took steps to prolong her detention after she was unlawfully taken into custody. *Id.* at ¶¶ 47-48.

Despite their contention that it is *Plaintiff's* duty to resolve the South Carolina criminal case,[3] it is Defendants who have utterly failed to engage in any *lawful* conduct seeking to advance that matter over the past thirty-four months. Am. Compl. *passim.* In fact, despite their claim that the case "invokes important state interests," it would appear that South Carolina's only interest in the criminal case is its potential value in shielding law enforcement against civil liability. Though Plaintiff readily concedes the importance of criminal matters in general, she respectfully submits that where a criminal case is so unimportant to a state that it fails to engage in any discernible legal effort to prosecute for a period of approximately three years, that specific case does not invoke important state interests.

### Plausibility of Plaintiff's Pleadings

While the majority of the Defendants' Motion is couched within the context of the *Younger* abstention doctrine, they have also directly and indirectly raised several other issues which merit further discussion under Fed.R.Civ.P. 12(c) review.

### Circumstances Under Which Arrest for Out-of-State Charges is Lawful

It is undisputed that the South Carolina Defendants solicited local law enforcement to arrest and extradite Plaintiff. Am. Compl. ¶ 39, Doc. 3, PageID#26. However, any suggestion that this conduct was lawful or constitutionality permissible is entirely without merit.

Under Ohio law, there are several methods by which law enforcement officials may effectuate the lawful arrest and extradition of an individual who is alleged to have committed a criminal offense in another state. These include either the acquisition of a governor's warrant or a

---

[3] Motion, Doc. 31, PageID#109.

fugitive-from-justice judicial warrant. Additionally, in some limited cases, warrantless arrests might even be permitted. However, none of these lawful methods were utilized by the Defendants.

1. Governor's Warrant

Ohio law provides that "the governor shall have arrested and delivered to…any other state…any person charged in that state with treason, felony, or other crime, who has fled from justice and is found in this state." R.C. 2963.02. However, Ohio law does not authorize the governor to recognize such extradition requests unless they are (1) made in writing and (2) include both a copy of the charging document, as well as "[a] copy of a judgment of conviction or of a sentence imposed in execution thereof, together with a statement by the executive authority of the demanding state that *the person claimed has escaped from confinement or has broken the terms of his bail, probation, or parole*." R.C. 2963.03. (Emphasis added). Within this context, "the executive authority" of the demanding state "includes the governor, and any person performing the functions of governor." R.C. 2963.01(B). None of the Defendants fit that definition.

There is also a separate provision under Ohio's legal framework, one which permits the issuance of a governor's warrant for individuals located in Ohio who engaged in conduct which "intentionally result[ed] in a crime…even though the accused was not in that state at the time of the commission of the crime, and has not fled therefrom." R.C. 2963.06. However, any such arrest can only be made upon "demand of the executive authority" of the requesting state: again, this means the governor of South Carolina, or at the very least another individual performing in that capacity. *Id.* Even then, the issuance of a warrant under those circumstances is determined at the discretion of the governor of Ohio. *Id.*

Had either of the foregoing procedures been followed, and had the governor signed an arrest warrant, then Ohio law enforcement officers would have been authorized "to arrest

[Plaintiff] at any time and any place where [s]he may [have been] found within the state." R.C. 2963.07. However, Defendants never attempted, much less followed, either process.

The allegations set forth in the Amended Complaint clearly reflect that a governor's warrant was neither requested nor obtained. As such, there was no legal authority for Plaintiff's arrest, detention, or extradition pursuant to R.C. 2963.03 through R.C. 2963.10.

2. Fugitive-from-Justice Warrant

Pursuant to R.C. 2963.11, officers may alternatively obtain an arrest warrant issued through a judge or magistrate "on the oath [or affidavit] of a credible person with knowledge." However, any such credible sworn statement must establish the following:

> [That the subject] is charged with the commission of any crime in any other state and with having fled from justice, or with having been convicted of a crime in that state and having escaped from confinement, or having broken the terms of the person's bail or parole or violated the conditions of a community control sanction or post-release control sanction, or whenever complaint has been made before any judge or magistrate in this state setting forth on the affidavit of any credible person in another state that a crime has been committed in the other state and that the accused has been charged in that state with the commission of the crime, and has fled from justice, or with having been convicted of a crime in that state and having escaped from confinement, or having broken the terms of bail, probation, or parole, and is believed to be in this state…

As reflected by the Amended Complaint, none of the foregoing factual conditions were true at the time of Plaintiff's arrest. Am. Compl., *passim*. Moreover, even if they had been, no judicially issued arrest warrant was obtained. *Id.* Finally, unlike governor's warrants, this provision does not permit arrest warrants to be issued in connection with conduct which purportedly occurred outside the requesting state. R.C. 2963.11 ("This section does not apply to cases arising under section 2863.06 of the Revised Code."). Accordingly, there was no legal authority for Plaintiff's arrest, detention, or extradition pursuant to R.C. 2963.11.

3. <u>Warrantless Arrests</u>

Finally, Ohio law allows for warrantless arrests "upon reasonable information that the accused stands charged in the courts of any state with a crime punishable by death or imprisonment for a term exceeding one year." R.C. 2963.12. As set forth in the Amended Complaint, and as Defendants agree, Plaintiff was charged with harassment in the second degree in violation of S.C. Code 16-3-1700(B). Am. Compl. ¶¶ 34-35, Doc. 3, PageID#25; Motion, Doc. 31, PageID#106.

Under South Carolina law, "a person who engages in harassment in the second degree is guilty of a misdemeanor and, upon conviction, must be fined not more than two hundred dollars, imprisoned not more than thirty days, or both." S.C. Code 16-3-1710(A). Notably, while this offense is subject to scaling penalties upon repeat violations—which are not alleged in the South Carolina case—it would still remain a misdemeanor under those circumstances, and any term of imprisonment could not exceed one year. S.C. Code 16-3-1710(B). Accordingly, there was no legal authority for Plaintiff's arrest, detention, or extradition pursuant to R.C. 2963.12.

**Circumstances Under Which Arrest for Out-of-State Charges is Unlawful**

An open criminal case in South Carolina does not authorize out-of-state law enforcement officers to solicit the kidnapping of an Ohio resident, nor is it sufficient to authorize Ohio officers to carry out the same. Despite their effort to gloss over Plaintiff's allegations, the Amended Complaint clearly asserts that the South Carolina Defendants actively solicited Westerville police officers to effectuate an arrest upon the authority of a warrant that they knew was invalid outside South Carolina. Am. Compl. ¶¶ 39-40, Doc. 3, PageID# 26; see also Arrest Warrant, Doc. 33-1, PageID#130-131 (authorizing arrest by "any law enforcement officer of this state or municipality or any other constable of this county"). This conduct was unlawful and directly calculated to deprive Plaintiff of her constitutional rights.

11

**Unreasonable Seizure and Excessive Force**

Beyond the issue of abstention, Defendants argue that they cannot be held liable with respect to Plaintiff's unreasonable seizure and excessive force claims because they did not personally participate in her arrest. Motion, Doc. 31, PageID#115-116. They cite *Smoak v. Hall,* 460 F.3d 768 (6th Cir. 2006) for the proposition that "[an] officer must be present for arrest" in order to subject to civil liability. *Id.* Once more, Defendants' analysis is underdeveloped.

In *Smoak*, the Sixth Circuit held that "dispatchers Brock and McHood," who *negligently* provided incorrect information which led to the Smoaks' traffic stop, "were neither supervisory nor were they present at the scene." *Id.*, at 784. The appellate court further noted that they "drew a plausible inference that a 'possible robbery' had occurred based on reports of a speeding station wagon and cash flying." *Id.* at 785. As a result, the Court found that neither individual was subject to civil liability.

However, in making that determination, the Sixth Circuit was careful to distinguish the facts present in *Smoak* from those addressed within *Bibart v. Stachowiak,* 888 F.Supp. 864 (N.D.Ill.1995). In that case, a dispatcher was held liable for incorrectly telling police officers in the field that a warrant had been issued for the arrest of a woman when, in fact, her sister was the subject of the warrant. The Sixth Circuit opined that the *Bibart* dispatcher was a "much greater participant in the arrest and made a much graver error." *Smoak,* at 785. To be clear, the "much graver error" referenced by the Sixth Circuit concerned the dispatcher's "plain incompetence." *Bibart,* at 868, citing *Hunter v. Bryant,* 502 U.S. 224, 228, 112 S. Ct. 534, 537, 116 L. Ed. 2d 589 (1991) ("The qualified immunity standard `gives ample room for mistaken judgments' by protecting `all but the plainly incompetent or those who knowingly violate the law.'").

In the instant matter, the South Carolina Defendants did not *negligently* provide inaccurate information based upon a plausible inference. As established by the Amended Complaint and the South Carolina warrant itself, they were clearly aware that their authority was confined to the boundaries of South Carolina. Am. Compl. ¶ 40, Doc. 3, PageID#26; Def. Ex. A, Doc. 33-1, PageID#130-131. They were aware that Plaintiff's arrest had to be accomplished through a proper and legal extradition process. *Id.* at ¶¶ 39 & 47. They sent copies of the warrants to Ohio law enforcement under the pretext that they were seeking extradition. *Id*. In short, they knowingly violated the law and solicited local law enforcement to do the same. As such, they are every bit as responsible for Plaintiff's kidnapping as the local officers who carried out the unlawful arrest.

### Malicious Prosecution

Plaintiff agrees that her claim for malicious prosecution does not vest until the South Carolina claim has been resolved. However, as it arises out of substantially similar operative facts as her remaining claims, it was included in the Complaint. Given these circumstances, Plaintiff respectfully requests that the Court stay these proceedings as to malicious prosecution until such time as the underlying criminal case has been resolved.

### **<u>CONCLUSION</u>**

As demonstrated above, application of the *Younger* abstention doctrine would be entirely inappropriate given the factual and procedural posture of this case. Moreover, the facts alleged in the Amended Complaint are more than sufficient to plausibly demonstrate valid causes of action against the South Carolina Defendants. Finally, to the extent that her malicious prosecution claim has not yet vested, Plaintiff respectfully moves the Court for an Order staying these proceedings as to that claim until the underlying criminal case is resolved.

Respectfully submitted,

/s/ Samuel H. Shamansky
**SAMUEL H. SHAMANSKY CO., L.P.A.**

Samuel H. Shamansky (0030772)
Donald L. Regensburger (0086958)
523 South Third Street
Columbus, Ohio 43215
(614) 242-3939 – Phone
(614) 242-3999 – Fax
shamanskyco@gmail.com

Counsel for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing was filed with the Clerk

of Court for the United States District Court for the Southern District of Ohio using the CM/ECF

system, which will send notification of such filing to all counsel of record on August 14, 2025.

/s/ Samuel H. Shamansky
SAMUEL H. SHAMANSKY